[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Robert Deangelis appeals the decision of the defendant commissioner of motor vehicles suspending CT Page 9848 his motor vehicle operator's license. The commissioner acted pursuant to General Statutes § 14-227b on the basis that the plaintiff failed a chemical test of the alcohol level of his blood after being arrested for driving while under the influence of alcohol. The plaintiff appeals pursuant to § 4-183. The court finds in favor of the plaintiff and remands the case for further proceedings.
The department held the required evidentiary hearing at the plaintiff's request. At the hearing, the police officer who arrested the plaintiff was present and testified. The officer's written reports, which were also admitted in evidence, state that he administered two breath tests to the plaintiff on an intoximeter machine. Also admitted in evidence were the paper tapes produced by the intoximeter machine.
At the hearing, the plaintiff's attorney challenged the accuracy of the intoximeter used to test the plaintiff, claiming that the evidence did not show that the machine had been properly checked for accuracy. The hearing officer noted that the police officer had indicated in his A-44 report form that the machine had been properly checked in accordance with applicable regulations and then asked, "Do you have any evidence to the contrary?" The attorney pointed out that the paper tapes generated by the machine indicated that the machine was checked before the tests were performed but did not indicate that it was checked after the tests. To this the hearing officer replied, "The tape is the old software. There are some systems out there that do not have the newer software that prints the tape directly or prints the results directly on the tapes. This is the old software."
Following the hearing, the hearing officer rendered his decision, finding in the affirmative on the four issues specified in § 14-227b(f). In particular, the hearing officer found that the results of the intoximeter tests performed on the plaintiff indicated that the ratio of alcohol in the plaintiff's blood was more than ten-hundredths of one per cent of alcohol by weight.
The plaintiff petitioned for reconsideration of the hearing officer's decision, arguing that the hearing CT Page 9849 officer was required to give advance notice of his specialized knowledge of the workings of the intoximeter machine that was used to test the plaintiff.
The commissioner, through her legal services division chief, rendered a decision on the petition for reconsideration, holding as follows:
 The intoximeter tapes show that the machine's self test feature correctly tested for machine operation within allowable standards prior to each test. Later models of the intoximeter print out standards after each test, a fact well known to police and hearing officers and not requiring scientific expertise or specialized knowledge to ascertain. The hearing officer had sufficient evidence to find that Mr. Deangelis failed the chemical test. Sec. 14-227a is a criminal statute. (Emphasis in the original.)
Based on the findings and conclusions summarized above, the commissioner suspended the plaintiff's license.
This court has held that the law requires the police to check the intoximeter machine immediately before and after performing a test on an individual. See General Statutes § 14-227a(c)(4). Ward v. Goldberg, Superior Court, JD of Hartford/New Britain at Hartford, DN. CV930704264 (March 8, 1994).
The sole basis of the plaintiff's appeal is his claim that there was insufficient evidence that the police checked the intoximeter machine for accuracy after performing the tests on the plaintiff, in accordance with the law, and, therefore, the hearing officer should not have relied on the test results to make the finding concerning the plaintiff's alcohol/blood ratio. More particularly, the plaintiff contends that the hearing officer wrongfully used technical or scientific facts within his specialized knowledge as evidence of the post-test machine check without affording the plaintiff an adequate opportunity to challenge those facts. CT Page 9850
General Statutes § 4-178(6) provides that an administrative agency may take notice of "generally recognized technical or scientific facts within the agency's specialized knowledge" in the course of its factfinding process. In such a case, however, subsection (7) of that statute requires that the agency must notify the parties to the proceedings "in a timely manner" so as to give them an opportunity to contest those technical or scientific facts. Without reference to this statute, our Supreme Court independently imposed a similar common law rule on administrative agencies in Feinson v.Conservation Commission, 180 Conn. 421 (1980). In that case, the court held
 If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings.
Id., 428-29.
In the present case, the hearing officer explicitly stated during the hearing that he knew technical facts about the workings of the intoximeter machine that would refute the plaintiff's contention that the machine was not properly performing its post-test self-checking function. Moreover, the department's decision on the petition for reconsideration makes clear that those facts were indeed used in formulating the final decision in the case.
As noted, § 4-178(6) permits the hearing officer to use such facts as he did in this case, but with an important limitation. Subsection (7) and Feinson v.Conservation Commission, supra, 180 Conn. 428-29, require that the agency notify the affected party in advance so that the party can attempt to contest the validity of such evidence. Notice in advance is necessary as a practical matter, because otherwise, the party would not have "an opportunity for rebuttal at an appropriate stage in the administrative proceedings." Id. CT Page 9851
The requirement that the agency notify a party in advance of its proposed use of specific scientific or technological facts within its specialized knowledge is based on principles of fundamental fairness. "Hearings before administrative agencies, . . . although informal and conducted without regard to the strict rules of evidence, must be conducted so as not to violate the fundamental rules of natural justice." (Citations and internal quotation marks omitted). Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 536 (1987). "Due process of law requires . . . that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence."
In the present case, the plaintiff plainly had no notice that the hearing officer would use his knowledge of the software controlling the self-checking mechanism in the particular model of intoximeter employed to test the plaintiff's breath. The plaintiff did not have, therefore, an opportunity to rebut those facts at the hearing. It is likewise clear that the plaintiff was substantially prejudiced by this lack of notice because the cornerstone of his attack on the intoximeter test results was that the machine had not been properly checked for accuracy.
The commissioner argues that the hearing officer had sufficient evidence in the form of the police officer's A-44 form to support the finding that the intoximeter produced reliable results. She refers, of course, to the statement checked by the officer to the effect that the machine was certified, that it was operated by a certified operator, and that it was checked for accuracy in accordance with regulations. Counsel accurately citesSchallenkamp v. DelPonte, 229 Conn. 31 (1994), in support of this argument. That argument would be persuasive, indeed probably conclusive, if the hearing officer and the department's legal officer on reconsideration had not emphasized their reliance on the previously undisclosed facts concerning the tapes generated by the intoximeter's software. The problem with the commissioner's argument is that the factfinders in this case relied on evidence CT Page 9852 other than, or at least in addition to the A-44 statements. And it was this other evidence that was crucial to the department's decision rejecting the plaintiff's principal argument.
The commissioner might even argue, in line with the dicta in Schallenkamp, that the failure to comply with the machine checking procedures required by law would not necessarily by itself be a basis for overturning the commissioner's decision. Id., 42-43. But, again, in this case, the colloquy at the hearing and the statements in the decision on reconsideration indicate clearly that the previously unrevealed technical facts played a major role in the hearing officer's decision. In such circumstances, the court may not overlook the explicit use of the undisclosed facts and affirm the decision on the basis that other facts would support the decision if the hearing officer had only used them instead. The court must take the administrative decision on the facts as rendered by the agency and may not substitute a more acceptable version in order to affirm it. "With regard to questions of fact, it is (not) the function of the trial court . . . to retry the case or to substitute its judgement for that of the administrative agency." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57-58 (1991).
The commissioner might also argue that the hearing officer's reliance on the facts he knew about the intoximeter's software amounted only to "the agency's experience, technical competence, and specialized knowledge (which) may be used in the evaluation of evidence," as provided in subsection (8) of § 4-178. This court has recently held that such knowledge, when used in the analysis of evidence that is in the record, need not be specifically disclosed in advance if the qualifications of the factfinder are known or readily ascertainable. Peart v. Psychiatric Security ReviewBoard, Superior Court, JD of Hartford/New Britain at Hartford DN. CV940540988 14 Conn. L. Rptr. 276 (May 17, 1995). In that case, the court distinguished between the requirements of §§ 4-178(6) and (7), on the one hand, and § 4-178(8) on the other. The requirements of subsections (6) and (7) pertain to scientific or technical facts that are not in the record and must, therefore, be disclosed CT Page 9853 in advance. That was the situation in this case, but there was, of course, no advance notice.
By contrast, in a subsection (8) situation, the agency members are using their special qualifications to evaluate matters that have been formally admitted as evidence in the record. The parties are entitled to know the special qualifications of the agency members, and inPeart, the court noted that the special qualifications were mandated by statute, thus affording full disclosure. See also Levinson v. Board of Chiropractic Examiners,211 Conn. 508 (1989). That subsection does not apply to the circumstances of this case.
The failure of the hearing officer to notify the plaintiff in a timely manner, so as to afford an opportunity for rebuttal, that he would use scientific or technical facts about the intoximeter machine, which were within his specialized knowledge, violated §§ 4-178(6) and (7) and denied the plaintiff due process of law. The denial resulted in substantial prejudice to the plaintiff because the unrebutted evidence in question was material to the hearing officer's determination that the plaintiff's alcohol/blood ratio exceeded the legal level.
Pursuant to General Statutes §§ 4-183(j) and (k), the plaintiff's appeal is sustained and the case is remanded to the department of motor vehicles for a new hearing to be conducted in a manner consistent with this decision.